IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DENNIS MACKLIN                                                                                          PLAINTIFF

v.                                    Case No. 4:11-cv-00900-KGB

FMC TRANSPORT, INC.                                                                              DEFENDANT

**OPINION AND ORDER**

Plaintiff Dennis Macklin brings this action against defendant FMC Transport, Inc., alleging racial discrimination pursuant to 42 U.S.C. § 1981. Before the Court is FMC Transport's motion for summary judgment and motion *in limine* (Dkt. Nos. 63, 65), both of which have been fully briefed. For the reasons below, the Court grants the motion for summary judgment and denies as moot the motion *in limine*.

**I.    Factual Background**

The following facts are taken from FMC Transport's statement of uncontroverted material facts (Dkt. No. 64-1) and Mr. Macklin's statement of contested facts (Dkt. No. 76-1). FMC Transport argues that Mr. Macklin's statement of contested facts does not comply with the requirements of Federal Rule of Civil Procedure 56(c)(1) and thus that the Court should deem FMC Transport's statement admitted. FMC Transport cites the case of *Robinson v. American Red Cross*, in which the Eighth Circuit Court of Appeals deemed facts in the movant's statement of uncontested facts undisputed when the non-movant failed to submit a response to the movant's statement through a "separate, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried," as required by this Court's Local Rule 56.1. 753 F.3d 749, 754-55 (8th Cir. 2014). However, *Robinson* is distinguishable because here Mr. Macklin did respond to FMC Transport's statement (*see* Dkt. No. 76). FMC Transport

complains that Mr. Macklin's response lacks citations or references to specific parts of the record. Rule 56(e) provides that, in such a situation, the Court *may* take certain actions. The Court declines to take such actions here.

On May 31, 2005, Mr. Macklin became an independent lease truck driver for FMC Transport, which is a Missouri corporation involved in the transportation of petroleum and petroleum based products. Mr. Macklin owned his own truck while working for FMC Transport. On April 26, 2010, Mr. Macklin was involved in an accident that totaled his truck and rendered it inoperable. He was ticketed for the accident, though that ticket was later dismissed.

FMC Transport's safety and performance program, which all drivers are required to review and follow, involves a point system that gives each driver 12 points per year. Points are deducted for various violations, and an employee's employment or lease is terminated with the loss of all 12 points in one year. FMC Transport states, and the record supports, that an accident review board, comprised of two drivers and one company official, reviews accidents to determine if they are preventable or non-preventable as defined by the safety and performance program (Dkt. No. 67-4, at 3; Dkt. No. 67-15, at 12-15). A preventable accident results in the loss of three to 12 points (Dkt. No. 67-4, at 3). It is not clear from the record before the Court whether the accident review board or other FMC Transport managers choose the amount of points to deduct for a preventable accident.

FMC Transport states, and the record supports, that on May 24, 2010, the accident review board reviewed the investigatory report and details of Mr. Macklin's April 26, 2010, accident (Dkt. No. 67-6; Dkt. No. 67-15, at 12-15). Gary Picard, FMC Transport's safety director, facilitated the accident review board, which was comprised of Scott Altermatt, as a company official, and Kevin Baker and Robert Hill, as drivers (*Id.*). According to the safety and

performance program, at the accident review board, a safety director "will not vote, only present the facts as they are understood" (Dkt. No. 67-4, at 3); at Mr. Macklin's accident review board, Mr. Picard states that he was "there only to give [the board] the documents that we have" and that he did not "make any evidentiary presentation" (Dkt. No. 67-15, at 13).  The accident review board determined that Mr. Macklin's accident was preventable, and four points were deducted for the accident, resulting in Mr. Macklin losing all 12 points for that year (*Id.*).  On May 24, 2010, Mr. Picard sent to Mr. Macklin a letter stating that "[w]e will be deducting 4 safety and performance points for this accident" and "[w]e will be terminating your lease at this time due to the loss of all your safety points" (Dkt. No. 67-6; *see* Dkt. No. 67-15, at 12-15).  Although Mr. Macklin apparently signed a copy of the safety and performance program provisions that explained he had a right to appeal the accident review board's decision (Dkt. No. 67-15, at 39), Mr. Macklin did not appeal.

## II.     Legal Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine

issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (citations omitted). Accordingly, this Court applies the same summary judgment standard to discrimination cases as it does to all others.

**III.   Analysis**

To survive FMC Transport's motion for summary judgment, Mr. Macklin must either present direct evidence of race discrimination or create an inference of unlawful discrimination under the three-step analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[1] *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014). Because Mr. Macklin does not present direct evidence of race discrimination, the Court turns to the *McDonnell Douglas* analysis. Under that analysis, "a presumption of discrimination is created when the plaintiff meets his burden of establishing a prima facie case of employment discrimination." *Id.* If a plaintiff makes out a *prima facie* case, the burden shifts to the defendant to come forward with evidence of a legitimate, nondiscriminatory reason for its actions. *Id*. at 577-78. "If the

---

[1] Mr. Macklin argues that FMC Transport uses the wrong legal standard, specifically the legal standard governing racial discrimination brought under Title VII, to analyze his § 1981 claims. However, he does not provide an alternative standard, and both § 1981 and Title VII discrimination claims are analyzed under the *McDonnell Douglas* burden shifting framework. *Robinson v. Am. Red Cross*, 753 F.3d 749, 754 (8th Cir. 2014).

4

employer meets its burden, the presumption of discrimination disappears, and plaintiff is required to prove the proffered justification is merely pretext for discrimination." *Id.* at 578.

To establish a *prima facie* case of race discrimination, Mr. Macklin must show that "(1) he is a member of a protected class, (2) he met [FMC Transport's] legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Id.* (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853-54 (8th Cir. 2012)). Mr. Macklin, as an African American, is a member of a protected class, and it is undisputed that FMC Transport took an adverse employment action against him. FMC Transport contends that Mr. Macklin fails to satisfy the second and fourth elements. Evidence of pretext may satisfy the inference-of-discrimination element, and Mr. Macklin may show pretext, among other ways, by showing that FMC Transport "(1) failed to follow its own policies, (2) treated similarly-situated [independent lease truck drivers] in a disparate manner, or (3) shifted its explanation of the employment decision." *Id.* (quoting *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)).

Attempting to establish an inference of discrimination, Mr. Macklin first appears to argue that FMC Transport, in finding the accident preventable and deducting four points for the accident, failed to follow its own policies in the safety and performance program, in part because his accident was actually unpreventable. Specifically, Mr. Macklin appears to contend that FMC Transport did not check the brakes on his truck or have a Department of Transportation officer check the brakes, despite his requesting an investigation and informing Mr. Picard that he had brake repair work performed prior to the accident. Mr. Macklin provides no support for this claim, and Mr. Picard's testimony contradicts it by stating that Mr. Altermatt checked the brakes

for anything abnormal after the accident but did not prepare a written report (Dkt. No. 67-15, at 19-20, 35). Mr. Macklin also apparently argues that FMC Transport should not have deducted four points for this accident because his ticket for the accident was eventually dismissed. Lastly, Mr. Macklin appears to claim that he presented his own expert's investigatory report on the brakes to Mr. Picard and that FMC Transport "completely disregarded" it, but Mr. Macklin does not state whether he presented the report before or after the accident review board reviewed his accident, despite having the burden to present evidence sufficient to show a *prima facie* case (Dkt. No. 73, at 10). FMC Transport does not appear to dispute that the report was not presented to the review board. However, FMC Transport responds that the report was obtained by Mr. Macklin for a prior lawsuit and thus was not available to be produced by Mr. Picard for the accident review board's consideration (Dkt. No. 77, at 4-5). The record seems to support FMC Transport's response.

Even if the cause of the accident is under genuine dispute, it is not a material fact that bears on the outcome of Mr. Macklin's claims because, under FMC Transport's safety and performance program, the accident review board only reviews the "facts as they are understood" and presented by the safety director (Dkt. No. 67-4, at 3). There is no requirement in the safety and performance program that the accident review board or safety director make any investigation or wait to see if any ticket is dismissed before considering it. Moreover, FMC Transport's safety and performance program takes into account the possibility that the safety director may overlook or otherwise fail to present an important fact: to the extent a driver is not satisfied with the accident review board's decision or the facts as presented by the safety director, the driver may appeal the decision and appear before an appeal board to present his or her own facts (Dkt. No. 67-4, at 3). Mr. Macklin apparently signed a copy of the safety and

performance program that included this provision (Dkt. No. 67-15, at 39), but he did not appeal to present his own facts to an appeal board. There is no evidence that Mr. Picard's facilitation of the accident review board, the board's decision that Mr. Macklin's accident was preventable based on the facts as understood by board at the time, or the subsequent deduction of four points from and termination of Mr. Macklin violated FMC Transport's own policies. Subsequent information tending to show that Mr. Macklin's accident was unpreventable does not bear on the outcome of Mr. Macklin's claims.

Mr. Macklin next argues that FMC Transport treated him less favorably in several ways than other similarly-situated independent lease truck drivers. To make such a claim, Mr. Macklin must show that the other drivers were "similarly situated in all relevant respects." *Young*, 754 F.3d at 578 (quoting *Chappell v. Bilco Co.*, 675 F.3d 1110, 1119 (8th Cir. 2012)). First, Mr. Macklin provides the names of four Caucasian independent lease truck drivers who allegedly had accidents that FMC Transport did not record or for which FMC Transport did not deduct points. However, Mr. Macklin provides no evidence regarding the circumstances of these accidents. He does not claim, and there is no evidence in the record, that the accident review board determined these accidents were preventable. Without evidence as to the circumstances of these accidents, a reasonable juror could not conclude that a finding by the accident review board that these accidents were unpreventable constitutes disparate treatment of Mr. Macklin based on race. In short, Mr. Macklin has not shown that these drivers were similarly situated to him in all relevant respects.

Second, Mr. Macklin provides the names of three Caucasian independent lease truck drivers who had preventable accidents for which FMC Transport deducted only three points. Again, there is no evidence in the record as to the circumstances of these accidents. Further,

under the safety and performance program, a preventable accident results in the loss of at least three points and at most 12 points (Dkt. No. 67-4, at 3). Based on the record before the Court, a reasonable juror could not conclude that a deduction of three points for these accidents constitutes disparate treatment of Mr. Macklin based on race, as Mr. Macklin has not shown that these drivers were similarly situated to him in all relevant respects. Further, before his April 26, 2010, accident, Mr. Macklin only had three points remaining (Dkt. No. 67-5, at 5); regardless of whether three or four points were deducted from Mr. Macklin, all 12 of his points would have been exhausted, leading to his termination.

Third, Mr. Macklin provides the names of two Caucasian independent lease truck drivers who quit driving for FMC Transport due to points but were allowed to return later. One driver quit with apparently all 12 points remaining and returned approximately four months later (Dkt. No. 75-27), and the other was dismissed for driving at least 11 miles-per-hour over the speed limit—which is an automatic deduction of 12 points—and rehired approximately one year later (Dkt. No. 75-29; *see* Dkt. No. 67-4, at 3). Mr. Macklin admits that he never contacted FMC Transport after receiving the letter terminating his original lease and thus never attempted to be rehired (Dkt. No. 67, at 48). Regardless, because neither Caucasian driver was terminated for an accident that the accident review board determined was preventable before being rehired, the drivers Mr. Macklin identifies are not similarly situated to him in all relevant respects.

Lastly, Mr. Macklin argues that FMC Transport treated him differently from other drivers by giving him worse driving assignments and conditions. He provides no specific instance where a similarly-situated Caucasian driver received a better driving assignment or condition. He merely argues that he generally received worse driving assignments and conditions than others and that all other drivers were Caucasian. But again he has not established that any of the

other drivers were similarly situated to him in all relevant respects. He also claims that certain FMC Transport employees, including the person responsible for handing out the driving assignments and conditions, made offhand comments or took certain actions that he interpreted as racist or discriminatory. Even so, these offhand comments and actions were not made by those involved in the decision to terminate his lease, and he admits that he never complained of these offhand comments to FMC Transport management (Dkt. No. 67, at 31, 34).

Even if Mr. Macklin could establish a *prima facie* case of race discrimination, FMC Transport has articulated a legitimate, nondiscriminatory reason to deduct four points from and to terminate Mr. Macklin—namely, the accident and deduction during the year of all 12 of Mr. Macklin's points. *See Young*, 754 F.3d at 577-78. At this stage then, "the presumption of discrimination disappears, and plaintiff is required to prove the proffered justification is merely pretext for discrimination." *Id.* at 578. "At the pretext stage, the test for determining whether employees are similarly situated to a plaintiff is a rigorous one." *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012) (quoting *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 853 (8th Cir. 2005)) (internal quotation marks omitted). The potential comparators "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* (quoting *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000)). For the reasons above and based on the record before the Court, Mr. Macklin cannot meet this rigorous test. Accordingly, the Court grants FMC Transport's motion for summary judgment and dismisses Mr. Macklin's race discrimination claim.

### IV. Conclusion

In sum, FMC Transport's motion for summary judgment is granted and its motion *in limine* is denied as moot. Mr. Macklin's claim of race discrimination is dismissed with prejudice.

SO ORDERED this the 12th day of January, 2015.

_____
KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE